# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

CEDRIC HUNTER,

        Plaintiff,

    v.

DEPTFORD BOARD OF EDUCATION,
WALTER BERGLUND, RICK
MARGOLESE, JOHN DOES (I-X),
AND ABC-XYZ CORPORATIONS,
(NAMES BEING FICTITIOUS AND
UNKNOWN),

        Defendants.

Civil No. 16-727 (NLH/KMW)

**OPINION**

---

**<u>APPEARANCES</u>:**

CEDRIC HUNTER
327 LASSALLE AVENUE
WENONAH, NJ 08090

    *Pro se Plaintiff.*

TIMOTHY R. BIEG
MADDEN & MADDEN
108 KINGS HIGHWAY EAST
SUITE 200
HADDONFIELD, NJ 08033

    *On behalf of Defendant and Cross-Defendant Deptford Board
    of Education and Defendant Rick Margolese.*

DANIEL POSTERNOCK
MATTHEW ROYE LITT
PASTERNOCK APELL, P.C.
400 N. CHURCH STREET
SUITE 250
MOORESTOWN, NJ 08057

    *On behalf of Defendant and Cross-Claimant Walter Berglund.*

**HILLMAN, District Judge**

This is an employment discrimination and retaliation action in which Plaintiff Cedric Hunter claims Defendant Deptford Township Board of Education (the "BOE") and two of its employees, Walter Berglund and Rick Margolese (collectively, "Defendants"), discriminated against him based on his race and age, and retaliated against him because he lodged complaints against them with the Equal Employment Opportunity Commission (EEOC).

There are three motions before the Court: two Motions for Summary Judgment filed by Defendants (Docket Nos. 125 & 126), and a "Motion to Suppress Evidence" filed by Plaintiff (Docket No. 127). For the reasons expressed below, this Court will deny Plaintiff's Motion to Suppress, and will grant Defendants' Motions for Summary Judgment.

## BACKGROUND

The Court takes its facts from the parties' statements of material facts not in dispute.[1] The Court will note any factual disputes where relevant.

---

[1] Notably, Plaintiff concedes in his opposition to Defendants' Motions for Summary Judgment that the "material facts of this case are not in dispute[.]" (Docket No. 137 at 7). Plaintiff did not submit a counterstatement of material facts or otherwise respond to the statements of material fact submitted by Defendants in a manner required by Local Civil Rule 56.1.

On an unspecified day in January 2012, Plaintiff was hired by the BOE as an evening custodian to be primarily staffed at Shady Lane Elementary School.  Plaintiff's general duties included "[k]eep[ing] the building and premises including sideways, driveways, and play areas clean and safe at all times[;]" "[p]erform[ing] all proper cleaning methods to include dusting, sweeping, scrubbing, mopping, sanitizing, vacuuming, . . . of all areas of responsibility[;]" and "[p]erform[ing] all proper cleaning methods to furniture, floors, walls, doors, marker boards, chalkboards, lavatory fixtures, windows, computer and televisions monitors, computer keyboards, desks, water fountains, and building structures."  (Docket No. 125-5 ("BOE SOMF") at 22, ¶14; BOE SOMF, Ex. C).

At all times relevant to this action, Defendant Margolese served as the BOE's Assistant Supervisor of Custodians/Maintenance, and Defendant Berglund served as the Head Supervisor of Custodians/Maintenance.  Defendants Margolese and Berglund were directly responsible for supervising Plaintiff's work.

Over the course of Plaintiff's employment, Defendants received more than forty (40) complaints about his custodial work.  After numerous complaints, on January 25, 2013, Plaintiff was confronted about his deficient performance and placed on the first of three corrective action plans.  Pursuant to the first

corrective action plan, Plaintiff received full retraining and was reminded of his job duties and the BOE's expectations of him.

Complaints about Plaintiff's performance continued. For example, on March 22, 2013, a fifth-grade teacher complained that her classroom was not swept, and that trash was "sitting on the floor for three days[.]" (BOE SOMF ¶29, Ex. F).

On April 3, 2013, a special education teacher complained that tables in her classroom were "not cleaned" during the evening hours, and areas around her classroom appeared not to have "been swept[.]" (BOE SOMF ¶29).

On April 8, 2013, Shady Lane's School Principal, Jackie Scerbo ("Principal Scerbo"), wrote Defendant Margolese about Plaintiff's work performance. Principal Scerbo shared that a walk-though of the building revealed that the floors had not been cleaned the night before and that classroom desks were not cleaned. (BOE SOMF ¶29, Ex. F).

On May 1, 2013, staff complained about "awful urine smell[s]" that were progressively worsening over the course of several days and could be smelled throughout the hallways. (BOE SOMF ¶29, Ex. F). On May 2, 2013, Principal Scerbo contacted Defendant Margolese to report additional complaints she received about Plaintiff's work.

Around the same time, Plaintiff was placed on a second corrective action plan and again retrained. On May 2, 2013, Plaintiff acknowledged receipt of the second corrective action plan but objected to the assessments contained in it.

On or about May 13, 2013, the BOE issued a written evaluation of Plaintiff's performance and deemed it to be "unacceptable to [the BOE's] standard of cleaning." (BOE SOMF, Ex. G). Plaintiff was offered the following comments:

> On January 10, 2013, I was called to Shady Lane to look at Cedric's area. The two student bathrooms were disgusting to say the least, and the rooms were not very clean. I was told, teachers were cleaning desks and other areas of the room. . . . On January 25, 2013, Cedric was put on a Corrective Action Plan (CAP). He was re-trained by one of my trainer custodians and myself. Over the last few months, I have performed inspections per the plan and have found his work to be unacceptable to our standard of cleaning. Though there was some improvement, overall, Cedric's section is unsatisfactory. During my inspections, I would tell Cedric how I wanted something done, or would give him advice and suggestions. My next inspection, I would find the same problem areas.

(BOE SOMF ¶30). Plaintiff acknowledged receipt of the written evaluation but objected to its findings.

On June 14, 2013, Principal Scerbo wrote Defendants Margolese and Berglund to share that Plaintiff missed work the night before, and as a result, the school building was not cleaned.

Following additional complaints, on July 1, 2013, Plaintiff was placed on a six-month probationary period. (BOE SOMF ¶40, Ex. J). Plaintiff objected to his probationary term as being a means of harassment. While the record does not make clear exactly when, around this same time, Plaintiff was transferred from Shady Lane to another school in the district, the Central Early Childhood Center ("Central").

On July 10, 2013, Central's Principal, Maria Geoffrey ("Principal Geoffrey"), emailed Defendants Berglund and Margolese complaining about Plaintiff's performance. Principal Geoffrey explained that Plaintiff was mopping the halls with dirty water and was not properly cleaning bathrooms. Principal Geoffrey also described Plaintiff's failure to properly clean the nurse's office.

On September 5, 2013, Principal Geoffrey emailed Defendants Berglund and Margolese to share that "the bathrooms are not getting cleaned well" and that other tasks had been poorly completed. (BOE SOMF ¶43, Ex. K).

On September 10, 2013, Principal Geoffrey complained that urine stains remained on the nurse's floor for several days, and that Plaintiff was again "not cleaning his area properly[.]" (BOE SOMF ¶44, Ex. L). That same day, supervisors met with Plaintiff about his deficient performance. During that meeting,

Plaintiff requested additional training, which the BOE ultimately provided.

On September 18, 2013, Plaintiff was provided with a document highlighting some of the complaints against him and outlining a perceived "lack of effort[.]" (BOE SOMF Ex. N). Plaintiff acknowledged receipt of this document but claimed it was the product of workplace retaliation.

From September 23, 2013 through November 19, 2013, Defendants received numerous additional complaints about Plaintiff's work. (BOE SOMF ¶¶51-53). On November 20, 2013, Defendant Margolese inspected Plaintiff's work area and observed numerous deficiencies, including dirty floors and unkept bathrooms. (BOE SOMF, Ex. Q). Defendant Margolese shared these findings with Plaintiff by letter dated November 21, 2013, which Plaintiff acknowledged receiving. (BOE SOMF, Ex. Q).

On December 4, 2013, Defendant reported to the BOE that "not only is there still no improvement with [Plaintiff's] cleaning, it has actually deteriorated." (BOE SOMF, Ex. S).

On an unspecified day in January of 2014, Plaintiff received a two-day suspension for poor performance. Thereafter, Plaintiff was placed on a third corrective action plan.

Complaints about Plaintiff's work continued. On January 16, 2014, Defendants received a complaint that Plaintiff's section of the building remained littered with trash and dirty

rags, was not vacuumed properly, and countertops appeared covered with dirt.  (BOE SOMF ¶57).

On March 24, 2014, the BOE issued a letter to Plaintiff advising him of the continued complaints against him and highlighting his under-performance.  The letter noted that Plaintiff had "shown no signs of improvement" and was "performing far below the standards" expected.  (BOE SOMF ¶59, Ex. V).  Plaintiff acknowledged receipt of this letter but denied the accusations contained in it.

On May 28, 2014, the BOE advised Plaintiff he was not being offered a renewed contract for the 2014-2015 school year due to his "[u]nsatisfactory job performance[.]"  (BOE SOMF, Ex. W).

On February 10, 2016, Plaintiff filed this matter with the Court.  Plaintiff's Complaint contains four counts: one under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e-2(h) ("Title VII"), for unlawful employment discrimination on the basis of race (Count I); one under Title VII for retaliation (Count II); one under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, for unlawful age discrimination (Count III); and one under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.* (Count IV).

On July 18, 2019, Defendants BOE and Rick Margolese filed a joint Motion for Summary Judgment (Docket No. 125,) and on July

19, 2019, Defendant Walter Berglund filed his own Motion for
Summary Judgment (Docket No. 126). Plaintiff opposed these
motions on August 23, 2019.

Shortly thereafter, on July 19, 2019, Plaintiff filed a
"Motion to Suppress Evidence" (Docket No. 127), which Defendants
opposed on August 2, 2019.

## ANALYSIS

### A.   Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this case
pursuant to 28 U.S.C. §§ 1331 and 1367.

### B.   Plaintiff's Motion to Suppress Evidence

As this matter is set for trial, the Court construes
Plaintiff's "Motion to Suppress Evidence" as a motion *in limine*
to preclude Defendant's use of certain evidence at trial.
Plaintiff's entire argument in support of his Motion to Suppress
is that:

> [a]s a governmental entity, the [BOE] cannot
> obviate, distribute, or solicit evidence that is
> fraudulently obtained or that is purposefully gathered
> by any agent or employee of the organizations during the
> course of illegal or fraudulent activity. Any
> information in defense of this case was rendered
> prejudicial due to Rule 403.

(Docket No. 127). Defendants oppose Plaintiff's motion on the
grounds that Plaintiff has not met his burden under Rule 403 of
the Federal Rules of Evidence, and that the motion is otherwise
unintelligible.  The Court agrees.

9

The burden under Rule 403 is on the party opposing admission, who must show that the probative value of evidence "is substantially outweighed by the danger of unfair prejudice." See Fed. R. Evid. 403. Pursuant to Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

However, the Third Circuit has cautioned that "pretrial Rule 403 exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage"). Moreover, the Third Circuit has characterized Rule 403 as a "trial-oriented rule" such that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." In re Paoli R. Yard PCB Litig., 916 F.2d at 859.

Plaintiff fails to identify which evidence he believes must be excluded pursuant to Rule 403, rending his application deficient.  As such, Plaintiff has not met his burden under the Rule and the Court must deny his motion.

**C.  Defendants' Motions for Summary Judgment**

a. <u>Motion for Summary Judgment Standard</u>

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  <u>Id.</u>  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)

(citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"--that is, pointing out to the district court—-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'"

12

Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

b. The Motions for Summary Judgment

There are two separate motions for summary judgment before the Court. For purposes of clarity, the Court begins by noting the arguments presented by each of the various Defendants.

As to Plaintiff's age and race discrimination claims (Counts I and III of Plaintiff's Complaint), all Defendants argue that Plaintiff's claims fail because Plaintiff (1) cannot state a prima facie case under the law or, in the alternative, (2) cannot establish pretext. Defendants BOE and Margolese also argue that Plaintiff's Title VII and ADEA claims fail as a matter of law against the individual Defendants because neither Title VII nor the ADEA permit claims to proceed against non-employers.

As to Plaintiff's retaliation claims (Count II and IV),
Defendants argue that Plaintiff's claims fail as a matter of law
for the same reasons the discrimination claims fail.

### i. The McDonnell Douglas Framework

Before turning to the parties' arguments, the Court notes
that Plaintiff's claims are analyzed under the McDonnell Douglas
burden-shifting framework.  Under this standard, a plaintiff
must first  "establish a prima facie case of discrimination."
Parikh v. UPS, 491 F. App'x 303, 307 (3d Cir. 2012)(citing
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).
Once a plaintiff has established his prima facie case, the
burden shifts to the defendant to provide a legitimate, non-
discriminatory reason for the adverse employment action.  Under
the law,

> [t]he employer satisfies its burden of production by
> introducing evidence which, taken as true, would permit
> the conclusion that there was a nondiscriminatory reason
> for the unfavorable employment decision . . . . The
> employer need not prove that the tendered reason
> _actually_ motivated its behavior, as throughout this
> burden-shifting paradigm the ultimate burden of proving
> intentional discrimination always rests with the
> plaintiff.

Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)(citations
omitted).

If the defendant satisfies this burden of production, a
plaintiff must then show that the reason produced was mere

pretext for discrimination.  To show pretext, the relevant

standard requires a plaintiff to:

> "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"  <u>Fuentes</u>, 32 F.3d at 765.  In simpler terms, he must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason.

> <u>Keller v. Orix Credit All.</u>, 130 F.3d 1101, 1109 (3d Cir.

1997).

In other words, as the Third Circuit has held:

> to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

<u>Fuentes</u>, 32 F.3d at 764.  A plaintiff's evidence must "allow a

factfinder reasonably to infer that each of the employer's

proffered non-discriminatory reasons . . . was either a post hoc

fabrication or otherwise did not actually motivate the

employment action (that is, the proffered reason is a pretext)."

<u>Id.</u> (citations omitted).  With those standards in mind, this

Court will examine Defendants' arguments.

### ii. Whether Plaintiff's Race Discrimination Claims Fail as a Matter of Law

Plaintiff advances discrimination claims under both Title VII and the NJLAD.  Because the Third Circuit has recognized the similarity between discrimination claims brought under Title VII and NJLAD, the Court addresses these claims together.  See Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005).

### 1. Whether Plaintiff Has Established A Prima Facie Case

To establish a prima facie case under Title VII for discrimination, Plaintiff must show the following: (1) he "belongs to a protected class"; (2) he "was qualified for the position"; (3) he "suffered an adverse employment action"; and (4) "the adverse action occurred under circumstances that give rise to an inference of discrimination."  Davis v. City of Newark, 285 F. App'x 899, 903 (3d Cir. 2008) (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-12 (3d Cir. 1999)).  Plaintiff must establish these four elements "by a preponderance of the evidence."  Ditzel v. Univ. of Med. & Dentistry of N.J., 962 F. Supp. 595, 602 (D.N.J. 1997).

Under the NJLAD,

> [w]hen a [minority] plaintiff alleges racial harassment under the LAD, she must demonstrate that the defendant's 'conduct (1) would not have occurred but for the employee's [race]; and [the conduct] was (2) severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment are

altered and the working environment is hostile or abusive.'

Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) (quoting Taylor v. Metzger, 706 A.2d 685, 688-89 (N.J. 1998)).

Defendants point to the numerous complaints they received about Plaintiff's work, the several corrective action plans and retraining cycles provided to Plaintiff, and Plaintiff's continued non-performance of his duties as evidence of his lack of qualification for his position. Plaintiff does not directly address Defendants' arguments in his briefing.

While the Court tends to agree that the overwhelming evidence of Plaintiff's inability to perform his required tasks suggests that Plaintiff is unqualified for his custodial position, the Court finds that the issue is best addressed under the pretext analysis.

2. Whether Plaintiff Has Established Pretext

Assuming for the sake of argument that Plaintiff has established his prima facie case, Defendants argue that Plaintiff failed to present enough evidence of pretext considering the well-documented complainants about Plaintiff's non-performance of his job duties. The Court agrees.

To show pretext, Plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either "(1) disbelieve the employer's articulated

legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. Plaintiff has not pointed to any such evidence.

Defendants have produced overwhelming evidence in support of their proffered reason for terminating Plaintiff: insufficient job performance. The undisputed evidence shows that the BOE received dozens of complaints about Plaintiff's work performance from multiple sources, and that Plaintiff was retrained on at least three occasions. According to the undisputed facts, despite ample retraining, Plaintiff consistently failed to properly mop floors, dust, wipe down furniture, sanitize, and clean bathrooms - key aspects of Plaintiff's job duties.

After reviewing the evidence before the Court, including the parties' affidavits, documents, memoranda, and supporting materials, the Court finds that no reasonable jury could either (1) disbelieve Defendants' articulated, legitimate reason for terminating Plaintiff; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Plaintiff's termination. Accordingly, this Court will dismiss Plaintiff's Title VII and NJLAD discrimination claims (Counts I and IV) in their entirety.

### iii. <u>Whether Plaintiff's Retaliation Claims Fail as a Matter of Law</u>

Defendants argue dismissal is appropriate because Plaintiff has not made a prima facie showing of retaliation. Assuming for the sake of argument that Plaintiff has met his burden of proving a prima facie case, Defendants assert that Plaintiff has not presented facts which could support a finding of pretext.

Plaintiff generally asserts that he was retaliated against for filing certain unspecified complaints with the EEOC but fails to present this Court with copies of those complaints.

Generally, courts in this District have found that retaliation under Title VII and NJLAD do not require separate analysis:

> To make out a prima facie claim for unlawful retaliation under Title VII and the NJLAD, a plaintiff must produce evidence that: (1) she engaged in activity protected by Title VII and the NJLAD; (2) her employer took an adverse employment action against her either after or contemporaneous with her protected activity; and (3) a causal connection exists between that adverse employment action and her protected activity.

<u>Hargrave v. County of Atlantic</u>, 262 F. Supp. 2d 393, 423 (D.N.J. 2003) (citing <u>Abramson v. William Patterson Coll.</u>, 260 F.3d 265, 286 (3d Cir. 2001); <u>Craig v. Suburban Cablevision, Inc.</u>, 660 A.2d 505, 508 (1995)). This Court will engage in the familiar McDonnell Douglas burden-shifting analysis. <u>See</u> <u>Jorrin v. Lidestri Foods, Inc.</u>, No. 11-2064 (NLH/AMD), 2013 U.S. Dist.

LEXIS 44475, at *36-46 (D.N.J. Mar. 28, 2013) (applying burden-shifting to retaliation claims).

Defendants assert the reason for Plaintiff's termination was underperformance of job duties. The Court finds, as it did above, that Defendant has met its burden of production. Therefore, the Court must turn back to Plaintiff to determine whether this reason was mere pretext.

While Plaintiff argues that "any information proffered by the [BOE] . . . is purely pretext[,]" Plaintiff fails to expand upon that assertion. Plaintiff's argument does not rely on evidence in the record, and after a comprehensive search of the record, the Court can discern no evidence to support it. Plaintiff fails to draw any temporal or logical connection between his alleged-EEOC filings and his termination. Instead, the record supports a finding that Plaintiff was terminated for continuous underperformance.

Accordingly, for the same reasons discussed above, this Court finds Plaintiff has failed to produce evidence that would support a finding that Defendants' stated basis for terminating him was pretextual. Without a showing of pretext, this Court cannot allow these retaliation claims to proceed, whether under

Title VII or NJLAD.  Therefore, Plaintiff's retaliation claim (Count II) will be dismissed.[2]

> iv.  Whether Plaintiff's Age Discrimination Claims Fail as A Matter of Law

Plaintiff advances an age discrimination claim under the ADEA (Count III), and also advances a general NJLAD discrimination claim that could be read as applying to his age discrimination allegations (Count IV).  Because the Third Circuit has held that the elements of a prima facie case under the NJLAD and the ADEA are the same, the Court will address both together.  See Monaco v. American General Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004).

First, Defendants BOE and Margolese argue that Plaintiff's ADEA claim must be dismissed for failure to exhaust administrative remedies as Plaintiff has not sufficiently shown he filed any relevant complaint with the EEOC.  Second, Defendants generally assert that Plaintiff has not come forward with any evidence that he was discriminated against based upon his age.

---

[2] While Plaintiff also uses the term "aided and abetted" in his Complaint, (Docket No. 1 at ¶59), and while the NJLAD may impose liability for aiding and abetting in unlawful discrimination practices, N.J.S.A. 10:5-12(e), because the Court finds that no actionable discrimination has occurred, the Court need not address whether aider and abettor liability exists.

## 1. Whether Plaintiff Failed to Exhaust His Administrative Remedies

Generally, a plaintiff asserting an ADEA claim "must file a charge with the EEOC within 180 days of the alleged employment action." Scott v. Schindler Elevator Corp., 2019 U.S. Dist. LEXIS 74774, *14 (D.N.J. May 2, 2019) (Hillman, J.) (citing Marina Wood v. Kaplan Props., No. 09-1941 (JLL), 2009 U.S. Dist. LEXIS 89834, at *7 (D.N.J. Sept. 29, 2009)). The Third Circuit has termed this a "condition precedent to filing suit under the ADEA." Id. (citations omitted).

While the record does not contain a copy of any complaint Plaintiff allegedly filed with the EEOC, Plaintiff testified at his deposition to having filed "several" EEOC complaints against the BOE arising out of his employment. (Docket No. 126-2, 1T114:2-13). Plaintiff further testified that he supplied the EEOC with documentation regarding his claims, but that ultimately, the EEOC investigated and could not locate evidence to sustain his complaints. (Docket No. 126-2, 1T114:15-17). Moreover, during Plaintiff's deposition, counsel had a discussion in which they identified a "November 16, 2015 letter from the EEOC" which counsel suggests had been produced in discovery. (Docket No. 126-3, 1T247:2-15).

Based upon Plaintiff's testimony and the evidence before this Court, in deciding the present Motions for Summary

Judgment, the Court will reject Defendants' position.

Sufficient disputes of fact exist as to whether Plaintiff

actually filed a relevant EEOC complaint.  As such, the Court

cannot determine, based upon the record before it, that

Plaintiff failed to exhaust his administrative remedies.[3]

Accordingly, the Court will address the claim on the merits.

## 2. Whether Plaintiff's ADEA Claim Fails as A Matter of Law

The Age Discrimination in Employment Act ("ADEA")

prohibits terminating a person's employment due to their age. 29

U.S.C. § 623(a)(1).  To establish a prima facie case of age

discrimination, Plaintiff must demonstrate: (1) that he is at

---

[3] It is unclear why this issue, which turns on objective facts, is in fact unclear and both parties bear some responsibility for the lack of clarity.  If Plaintiff had filed a complaint with the EEOC, it would seem to be within the Plaintiff's personal knowledge as to when the complaint was filed, what claims were within the scope of the complaint, what the administrative process determined, and when it ended.  Plaintiff offers none of that evidence even though it would seem to offer a ready defense to the claim he failed to exhaust his administrative remedies. On other hand, the deposition transcript demonstrates that Defendants have been made privy to a letter from the EEOC regarding this case and that letter forms no basis for their summary judgment motion.  In light of the Plaintiff's *pro se* status and the obligation of the moving party, in the first instance, to demonstrate the absence of a material dispute of fact, Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact"), the Court will resolve this issue in Plaintiff's favor.

least 40 years old; (2) that he suffered an adverse employment action; (3) that he was qualified for the position he was terminated from; and (4) either (a) that he was "replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive" or (b) "facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'"  Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (quoting Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999)).  At bottom, though, Plaintiff "must prove that age was the 'but-for' cause of the employer's adverse decision."  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009).

For the reasons previously discussed, Plaintiff has not sufficiently demonstrated that he was qualified for the position he occupied.  Second, Plaintiff has not shown either (1) that he was replaced by another employee sufficiently younger than him or (2) facts which if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.  In fact, the record does not contain any information as to whether Plaintiff was replaced, let alone whether he was replaced by someone younger than him.  Third, Plaintiff has not produced or identified any evidence that his age was the but-for

cause of his termination.  As such, this Court will dismiss

Plaintiff's ADEA claim (Count III) in its entirety.[4]

---

[4] For purposes of completeness, the Court notes that Defendants
BOE and Margolese also argue that Plaintiff's Title VII and ADEA
claims fail as a matter of law as to the individual Defendants
because neither Title VII nor the ADEA permit claims against
individuals who are not employers. Defendants are correct.

"Title VII prohibits unlawful employment practices by
employers." Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir.
2002) (citing 42 U.S.C. § 2000e-2(a)). The statute defines
"employer" as "a person engaged in an industry affecting
commerce who has fifteen or more employees . . . and any agent
of such a person." 42 U.S.C. § 2000e(b). The Third Circuit has
consistently held that while employers may be held liable under
Title VII, "Congress did not intend to hold individual employees
liable under Title VII." Sheridan v. E.I. Dupont de Nemours &
Co., 100 F.3d 1061, 1078 (3d Cir. 1996); Freeman v. Harris, 716
Fed. Appx. 132, 133 (3d Cir. 2018) (same).

Similarly, the ADEA does not provide for liability against
non-employer individuals.  In pertinent part, the ADEA provides
that "It shall be unlawful for an employer . . . to fail or
refuse to hire or to discharge any individual or otherwise
discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment
because of such individual's age." 29 U.S.C. § 623(a).  As
relevant to the ADEA, the term "employer" means a "person
engaged in an industry affecting commerce who has twenty or more
employees for each working day . . . [and] . . . any agent of
such a person[.]" 29 U.S.C. § 630(b).  The ADEA, however, "does
not provide for individual liability." Hill v. Borough of
Kutztown, 455 F.3d 225, 246 n.29 (3d Cir. 2006); Parikh v. UPS,
491 Fed. Appx. 303, 308 (3d Cir. 2012) ("Neither Title VII nor
the ADEA provides for individual liability."); De Santis v. New
Jersey Transit, 103 F. Supp. 3d 583, 589-90 (D.N.J. 2015); Ross-
Tiggett v. Reed Smith LLP, Civ. No. 15-8083 (JBS/AMD), 2016 U.S.
Dist. LEXIS 113554, *12 (D.N.J. Aug. 24, 2016) (collecting
cases).

Plaintiff has not presented any evidence suggesting that
Defendants Margolese and Berglund, in their individual
capacities, meet the definition of "employer" under either the
ADEA or Title VII.  Instead, the record clearly shows that

## CONCLUSION

Based on the foregoing analysis, Plaintiff's Motion For Suppression of Evidence (Docket No. 127) will be denied, and Defendants' Motions for Summary Judgment (Docket Nos. 125 & 126) will be granted. This case will be dismissed in its entirety.

An appropriate Order will be entered.


Date: October 1, 2019              s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

---

Plaintiff was a BOE employee, who was merely supervised by Defendants Margolese and Berglund. As such, to the extent Plaintiff's Title VII and ADEA claims can be read as being brought against the individual Defendants, those claims cannot stand.